

FILED

APR 2 1 2004

UNITED STATES
BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BRAC GROUP INC. (f/k/a Budget Group, Inc.), <u>et al.</u>,[1] | ) | Case No. 02-12152 (CGC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
### UNDER 11 U.S.C. § 1129(a) AND (b) AND FED. R. BANKR. P. 3020
### CONFIRMING SECOND AMENDED JOINT CHAPTER 11 LIQUIDATING
### PLAN OF BRAC GROUP, INC. AND ITS DEBTOR SUBSIDIARIES

WHEREAS, BRAC Group, Inc. (f/k/a Budget Group, Inc.) ("<u>BGI</u>") and the above

captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"), as the "proponent[s]

of the plan" within the meaning of section 1129 of title 11 of the United States Code (the

"<u>Bankruptcy Code</u>"), filed the *Second Amended Joint Chapter 11 Liquidating Plan of BRAC*

*Group, Inc. and its Debtor Subsidiaries*, dated February 3, 2004 [Docket No. 3728], as further

amended consistent with the hearing held on February 4, 2004 [Docket No. 3896], and as

---

[1]     The Debtors are the following entities:  BRAC Group, Inc., Auto Rental Systems, Inc., BGI Airport Parking,
Inc., BGI Shared Services, Inc., BGI Shared Services, LLC, BRAC Credit Corporation, BRAC Car Sales, Inc., BRAC Fleet
Finance Corporation, BRAC Rent a Car Asia-Pacific, Inc., BRAC Rent a Car Caribe Corporation, BRAC Rent a Car
Corporation, BRAC Rent-A-Car International, Inc., BRAC Rent A Car of Japan, Inc., BRAC Rent a Car of St. Louis, Inc.,
BRAC Rent-A-Car of the Midwest, Inc., BRAC Rent-A-Car Systems, Inc., BRAC Sales Corporation, BRAC Storage
Corporation, BVM, Inc., Carson Chrysler Plymouth Dodge Jeep Eagle, Inc., Control Risk Corporation, Dayton Auto Lease
Company, Inc., Directors Row Management Company, LLC, IN Motors VI, LLC, Mastering The Move Realty, Inc., Mosiant Car
Sales, Inc., NYRAC Inc., Paul West Ford, Inc., Philips Jacobs Insurance Agency, Inc., Premier Car Rental LLC, Reservation
Services, Inc., BRAT Move Management, Inc., BRAT Relocation Services, Inc., BRAT TRS, Inc., TCS Properties, LLC, Team
Car Sales of Charlotte, Inc., Team Car Sales of Dayton, Inc., Team Car Sales of Philadelphia, Inc., Team Car Sales of Richmond,
Inc., Team Car Sales of San Diego, Inc., Team Car Sales of Southern California, Inc., Team Fleet Services Corporation, Team
Holdings Corp., Team Realty Services, Inc., The Move Shop, Inc., Transportation and Storage Associates, ValCar Rental Car
Sales, Inc., Vehicle Rental Access Company, LLC, and Warren Wooten Ford, Inc.

amended pursuant to the technical modifications attached as <u>Exhibit A</u> hereto (the "<u>Plan</u>")[2];
together with the *Disclosure Statement Describing Debtors' Second Amended Joint Chapter 11
Liquidating Plan*, dated February 3, 2004 [Docket No 3728], as further amended consistent with
the hearing held on February 4, 2004 [Docket No. 3897] (the "<u>Disclosure Statement</u>"); and

WHEREAS, on February 4, 2004, the Bankruptcy Court entered an order [Docket
No. 3770] (the "<u>Solicitation Order</u>") that, among other things, (a) approved the Disclosure
Statement under section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (b) established
April 7, 2004 as the date for the commencement of the hearing to consider confirmation of the
Plan, (c) approved the form and method of notice of the Confirmation Hearing (the
"<u>Confirmation Hearing Notice</u>"), and (d) established certain procedures for soliciting and
tabulating votes with respect to the Plan; and

WHEREAS, on March 26, 2004, the proposed BRACII CVA was approved
without modification at the meeting of BRACII's creditors and members; and

WHEREAS, absent any objections and subject to confirmation of the Plan, the
BRACII CVA will become effective on April 26, 2004;

WHEREAS, on March 30, 2004, the Creditors' Committee filed its Emergency
Motion for Order (i) Rescheduling the Hearing on Confirmation of Debtors' Second Amended
Joint Plan under Chapter 11 of the Bankruptcy Code and (ii) Scheduling a Hearing on the Joint

---

[2]     Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such
terms in the Plan.

2

Motion of the Official Committee of Unsecured Creditors and the Debtors for Order Approving

Settlement with Cherokee Acquisition Corporation, et al. [Docket No. 3974] (the "Scheduling

Motion"). Also on March 30, 2004, the Debtors filed their Limited Statement in Support of the

Official Committee of Unsecured Creditors' Motion for Order (i) Rescheduling the Hearing on

Confirmation of Debtors' Second Amended Joint Plan under Chapter 11 of the Bankruptcy Code

and (ii) Scheduling a Hearing on the Joint Motion of the Official Committee of Unsecured

Creditors and the Debtors for Order Approving Settlement with Cherokee Acquisition

Corporation, et al. and Supplemental Request [Docket No. 3975] (the "Statement in Support of

Scheduling Motion"); and

WHEREAS, the Scheduling Motion and Statement in Support of Scheduling

Motion requested that the Bankruptcy Court, on an expedited basis, reschedule the hearing date

to consider confirmation of the Plan, extend the period to file briefs, supporting affidavits and

other documents in connection with the confirmation of the Plan, and establish a hearing date to

consider the settlement agreement, dated April 1, 2004, by and among Cherokee Acquisition

Corporation, Cendant Corporation, BGI and all of its affiliated debtor affiliates, the Joint

Administrators of BRAC Rent-A-Car International, Inc. (f/k/a Budget Rent-A-Car International,

Inc.) ("BRACII") in the United Kingdom and the Creditors' Committee (the "Cherokee

Settlement Agreement"); and

WHEREAS, on March 30, 2004, the Joint Motion of the Official Committee of

Unsecured Creditors and the Debtors for Entry of an Order Pursuant to Sections 105 and 363 of

the Bankruptcy Code and Bankruptcy Rule 9019(a) Authorizing Settlement by and among, *Inter*

3

*Alia*, the Debtors, Cherokee Acquisition Corporation and the U.K. Administrators [Docket No. 3974] (the "Cherokee Settlement Motion") was filed requesting Bankruptcy Court approval of the Cherokee Settlement Agreement, and on April 2, 2004, The Trumbull Group, L.L.C. filed the Affidavit of Service by the Trumbull Group, L.L.C. (f/k/a Trumbull Associates, L.L.C and Trumbull Services, L.L.C.) Regarding Service of the Joint Motion of the Official Committee of Unsecured Creditors and the Debtors for Entry of an Order Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a) Authorizing the Settlement by and among, *Inter Alia*, the Debtors, Cherokee Acquisition Corporation and the U.K. Administrators [Docket No. 3975]; and

WHEREAS, on March 31, 2004, the Bankruptcy Court entered an order [Docket No. 3985] (the "Plan Scheduling Order") approving the relief requested in the Scheduling Motion and Statement in Support of Scheduling Motion, which order, among other things, (a) established April 20, 2004 as the rescheduled date to consider confirmation of the Plan (the "Confirmation Hearing") and (b) established April 20, 2004 as the hearing to consider the Cherokee Settlement Agreement; and

WHEREAS, the Debtors complied with the mailing and noticing requirements established under the Solicitation Order, as more fully set forth in the Affidavit of the Trumbull Group Regarding Service of the Solicitation Package [Docket No. 3884] (the "Trumbull Service Affidavit") and the Affidavit of Service of Voting and Non-Voting Documents by Innisfree M&A Incorporated [Docket No. 4041] (the "Innisfree Service Affidavit"); and

4

WHEREAS, the Debtors complied with the procedures for the tabulation of votes cast on the Plan pursuant to the Solicitation Order as more fully set forth in the Certification of Dan McSwigan with respect to the Tabulation of Class 3A, Certain 4A and 4B Votes Cast on the Second Amended Joint Chapter 11 Liquidating Plan of BRAC Group, Inc. and Its Debtor Subsidiaries [Docket No. 4044] (the "Trumbull Voting Certification") and Certification of David Hartic with respect to the Tabulation of Votes Cast by Security Holders on the Second Amended Joint Chapter 11 Liquidating Plan of BRAC Group, Inc. and Its Debtor Subsidiaries [Docket No. 4043] (the "Innisfree Voting Certification"); and

WHEREAS, more than one (1) Impaired Class has accepted the Plan, as set forth in the Trumbull Voting Certification and the Innisfree Voting Certification; and

WHEREAS, on March 26, 2004, the Debtors timely filed the Plan Supplement [Docket No. 3963] (as amended from time to time, including the amendments filed on April 16, 2004 [Docket No. 4051] and April 19, 2004 [Docket No. 4058], the "Plan Supplement")[3], with respect to the Plan, and served due and adequate notice thereof; and

WHEREAS, as set forth in the affidavits of Lisa Talley sworn to on or about March 29, 2004 and April 20, 2004 [Docket Nos. 3970, 4059 and 4060] the Debtors served notices of the filing of the Plan Supplement and the Schedule of Assumed Leases and Executory Contracts, attached as Exhibit C to the Plan Supplement, and the amendments thereto, upon each of the non-debtor parties identified in the Schedule of Assumed Leases and Executory Contracts; and

---

[3]       Unless otherwise specified herein, all references to the Plan shall also include the Plan Supplement.

5

WHEREAS, objections or purported objections to confirmation of the Plan were filed and served (the "Objections") by (i) the Commonwealth of Pennsylvania, Department of Revenue [Docket No. 3872]; (ii) the State of Washington [Docket No. 3783]; (iii) Maria & Igor Krochin and Mario Nunez, as personal representative of the estate of Tatiana Nunez [Docket No. 3907]; (iv) Patricia Hirsch [Docket No. 3913]; and (v) Insurance Company of North America, et al. [Docket No. 3971]; and

WHEREAS, certain of the Objections have been withdrawn or resolved on the terms and conditions (i) described on the record of the Confirmation Hearing or (ii) set forth in this Order (collectively, the "Resolved Objections"), and any remaining Objections are overruled on the merits pursuant to this Order; and

WHEREAS, on April 15, 2004, the Debtors filed a memorandum of law in support of confirmation of the Plan and a status report and response with respect to the Objections [Docket No. 4046] (the "Confirmation Memorandum"); and

WHEREAS, on April 15, 2004, the Debtors filed the Affidavit of Robert L. Aprati in Support of Confirmation [Docket No. 4045] (the "Aprati Affidavit"); and

WHEREAS, the Confirmation Hearing commenced on April 20, 2004.

NOW, THEREFORE, based upon the Bankruptcy Court's review of the Plan, the service affidavits, the Trumbull Voting Certification, the Innisfree Voting Certification, the Objections, the Aprati Affidavit and the Confirmation Memorandum; and upon all the evidence proffered or adduced at, memoranda and Objections filed in connection with, and arguments of

counsel made at the Confirmation Hearing, and the record presented at the Confirmation Hearing and the entire record of these Chapter 11 Cases; and after due deliberation thereon and good cause appearing therefor:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[2]

**IT IS HEREBY FOUND AND DETERMINED THAT:**

1.    **Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)).** This Bankruptcy Court has jurisdiction over these Chapter 11 Cases pursuant to sections 157 and 1334 of title 28 of the United States Code. Venue is proper pursuant to sections 1408 and 1409 of title 28 of the United States Code. Confirmation of the Plan is a core proceeding pursuant to section 157(b)(2) of title 28 of the United States Code, and this Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

2.    **Judicial Notice**. This Bankruptcy Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases, including, but not limited to, the hearing to consider the adequacy of the Disclosure Statement.

---

[2]     Pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

3.      **Burden of Proof**. The Debtors have satisfied the burden of proving the elements of section 1129(a) and (b) of the Bankruptcy Code by a preponderance of evidence, which is the applicable evidentiary standard for Confirmation of the Plan.

4.      **Transmittal and Mailing of Materials; Notice**. In accordance with applicable sections of the Bankruptcy Code and the Bankruptcy Rules, including, but not limited to, Bankruptcy Rules 2002, 3017 and 3020, due notice of the Confirmation Hearing and the opportunity to object to confirmation of the Plan was given to the Debtors' creditors, equity security holders and other parties-in-interest. The Disclosure Statement, the Plan, the Ballots, the Master Ballots, the Solicitation Order, and the Confirmation Hearing Notice, and all exhibits to any of such documents, which were transmitted and served as set forth in the Trumbull Voting Certification, Innisfree Voting Certification and associated declarations, were transmitted and served in compliance with the Solicitation Order and the Bankruptcy Rules, such transmittal and service were adequate and sufficient, publication of the Confirmation Hearing Notice was adequate and sufficient, and no other or further notice is or shall be required. In addition, the service of the Plan Supplement and the notice to non-debtor parties with respect to the Schedule of Assumed Leases and Executory Contracts was adequate under the circumstances and no other or further notice is or shall be required.

5.      **Voting**. Votes to accept and reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Order and all other applicable rules, laws and regulations.

6.      **Plan Compliance with Bankruptcy Code Sections 1122 and 1123**. Sections 1122 and 1123 of the Bankruptcy Code are satisfied under the Plan as more specifically

8

described below:

      (a)     Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid factual and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Interests. The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

      (b)     Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Article II of the Plan identifies and properly classifies those Classes that are unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

      (c)     Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Article II of the Plan identifies and properly classifies those Classes that are Impaired under the Plan, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

      (d)     No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

      (e)     Implementation of Plan (11 U.S.C. § 1123(a)(5)). The Plan, the Settlement Agreement, dated January 30, 2004 (the "Allocation Settlement Agreement"), the

9

Cherokee Settlement Agreement, the BRACII CVA and the various documents and agreements set forth in the Plan Supplement and this Order provide adequate and proper means for the Plan's implementation, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(f)    Charter Provisions (11 U.S.C. § 1123(a)(6)).  In connection with the corporate transactions contemplated and described in Article IV of the Plan, Reorganized BGI and Reorganized BRACII shall adopt amended Certificates of Incorporation and By-Laws prohibiting the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

(g)    Designation of Officers, Directors or Trustees (11 U.S.C. § 1123(a)(7)).  The Plan, as amended, and the record of the Confirmation Hearing set forth the future directors of Reorganized BGI and Reorganized BRACII and future management thereof in accordance with section 1123(a)(7) of the Bankruptcy Code and the appointment of such personnel is consistent with the best interests of the Debtors' creditors and with public policy.

(h)    Additional Plan Provisions (11 U.S.C. § 1123(b)).  The Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

(i)    Bankruptcy Rule 3016(a).  The Plan is dated and identifies the entities submitting it as proponents, thereby satisfying Bankruptcy Rule 3016(a).

7.    **Compliance with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1), (2)).**  Section 1129(a)(1) of the Bankruptcy Code is satisfied because the

Plan complies with all applicable provisions of title 11 of the United States Code. The Debtors
have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section
1129(a)(2) of the Bankruptcy Code. Specifically:

> a.   The Debtors are proper debtors under section 109 of the
>      Bankruptcy Code and proper Plan proponents under section
>      1121(a) of the Bankruptcy Code.
>
> b.   The Debtors have complied with applicable provisions of the
>      Bankruptcy Code, except as otherwise provided or permitted by
>      orders of the Bankruptcy Court.
>
> c.   The Debtors have satisfactorily complied with the applicable
>      provisions of the Bankruptcy Code, the Bankruptcy Rules, and the
>      Solicitation Order in transmitting the Plan, the Disclosure
>      Statement, the Ballots, the Master Ballots, the Confirmation
>      Hearing Notice and related documents and notices and in soliciting
>      and tabulating votes on the Plan.

8.   **Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))**.  The Debtors
have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying
section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in
good faith, this Bankruptcy Court has examined the totality of the circumstances surrounding the
filing of these Chapter 11 Cases. The Debtors' good faith is further evident from the facts and
record of these Chapter 11 Cases, the Confirmation Memorandum, the Aprati Affidavit, the
Disclosure Statement and the hearing thereon, and the record of the Confirmation Hearing and

other proceedings held in these Chapter 11 Cases. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates by providing the means through which Reorganized BGI and Reorganized BRACII may wind down their respective Estates and provide for the most effective means of the distribution of the Debtors' remaining assets and Cash. The Debtors, the UK Officeholder and the Creditors' Committee, each of the members of such committee in its capacity as an individual creditor of the Debtors and its capacity as a member of such committee, and each of the respective present or former members, officers, directors, employees, affiliates, attorneys, investment bankers, restructuring consultants and financial advisors of the foregoing, have acted in good faith, as applicable, in connection with the management and operation of the Debtors and the formulation, negotiation, proposal and implementation of the Plan and every contract, instrument, document or other agreement related thereto, including the ASPA, the Allocation Settlement Agreement, the Cherokee Settlement Agreement and the BRACII CVA.

         9.     **Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))**. Any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

         10.     **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))**. The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The Plan and Plan Supplement set forth the future officers and directors of Reorganized BGI and Reorganized BRACII. The appointment to such offices by such persons is consistent with the interests of the Debtors'

12

creditors and equity security holders and with public policy as required by section 1129(a)(5) of the Bankruptcy Code.

11.     **No Rate Changes (11 U.S.C. § 1129(a)(6))**. After confirmation of the Plan, Reorganized BGI's and Reorganized BRACII's businesses will not involve rates established or approved by, or otherwise subject to, any governmental regulatory commission. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases or with respect to the Plan.

12.     **Best Interests of Creditors (11 U.S.C. § 1129(a)(7))**. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. Evidence set forth in the Aprati Affidavit or otherwise proffered or adduced at the Confirmation Hearing (a) is persuasive and credible as of the dates such evidence was prepared, presented or proffered, (b) has not been controverted by other persuasive evidence or has not been challenged, (c) is based upon reasonable and sound assumptions, and (d) establishes that each holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

13.     **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))**. Based upon the Trumbull Voting Certification, the Innisfree Voting Certification, the Confirmation Memorandum, the Aprati Affidavit, the evidence adduced at the Confirmation Hearing and the arguments of counsel, section 1129(a)(8) of the Bankruptcy Code is satisfied with respect to all Impaired Claims under the Plan, because all of the Impaired Classes entitled to vote on the Plan

13

have accepted the Plan pursuant to section 1126(c) of the Bankruptcy Code. Section 1129(a)(8)(B) of the Bankruptcy Code is satisfied with respect to Class 1A, Class 2A, Class 1B, Class 2B and Class 3B because such Classes are unimpaired under the Plan and therefore are conclusively deemed to have voted to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.

14.     **Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b))**.

Class 7A, Class 8A and Class 5B are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Based upon the Confirmation Memorandum, the Aprati Affidavit and the evidence proffered, adduced, or presented by the Debtors at the Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to these rejecting Classes, as required by section 1129(b)(1) and (2) of the Bankruptcy Code. Thus, the Plan may be confirmed notwithstanding the Debtors' failure to satisfy section 1129(a)(8) of the Bankruptcy Code with respect to Class 7A, Class 8A and Class 5B. Upon confirmation of the Plan and the occurrence of the Effective Date, the Plan shall be binding upon the members of the rejecting Classes.

15.     **Treatment of Administrative and Priority Claims (11 U.S.C.**

**§ 1129(a)(9))**. Except to the extent that the Holder of a particular Claim has agreed to a different treatment of such Claim, the treatment of Claims under the Plan of the type specified in sections 507(a)(1) and 507(a)(3) through 507(a)(8) of the Bankruptcy Code, if any, complies with the provisions of section 1129(a)(9) of the Bankruptcy Code. Sections 1129(a)(9)(A) and (B) of the Bankruptcy Code are satisfied because all Allowed U.S. Debtor Group Administrative Claims,

14

Allowed U.S. Debtor Group Priority Non-Tax Claims, Allowed BRACII Administrative Claims, Allowed BRACII Preferential Claims and Allowed BRACII Priority Non-Tax Claims shall be paid in full, either in Cash equal to the amount of such unpaid Claims or such other treatment as Reorganized BGI or Reorganized BRACII, as applicable, and the Holder of such Claims shall have agreed upon in writing. Section 1129(a)(9)(C) of the Bankruptcy Code is satisfied in that U.S. Debtor Group Priority Tax Claims and BRACII Priority Tax Claims shall be paid in full, either in Cash equal to the amount of such unpaid Claims or such other treatment as Reorganized BGI or Reorganized BRACII, as applicable, and the Holder of such Claims shall have agreed in writing.

16.     **Acceptance By Impaired Classes (11 U.S.C. § 1129(a)(10))**.  At least one Class of Claims against the Debtors that is Impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider, thus satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.  As set forth in the Innisfree Voting Certification, the Trumbull Voting Certification and the Confirmation Memorandum, all of the Impaired Classes of Claims entitled to vote on the Plan have accepted the Plan.

17.     **Feasibility (11 U.S.C. § 1129(a)(11))**.  The Disclosure Statement, the Confirmation Memorandum, the Aprati Affidavit and the evidence proffered or adduced at the Confirmation Hearing, among other things, (a) are persuasive and credible, (b) have not been controverted by other persuasive evidence, and (c) establish that confirmation of the Plan is not likely to be followed by the need for further financial reorganization or a liquidation of the Debtors that is not proposed in the Plan, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

15

18. **Payment of Fees (11 U.S.C. § 1129(a)(12))**. All fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court, have been paid or will be paid pursuant to the Plan.

19. **Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))**. The Debtors have no retiree benefit obligations of the type specified in section 1114 of the Bankruptcy Code. Accordingly, as section 1114 is inapplicable to the Debtors, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

20. **Principal Purpose of the Plan (11 U.S.C. § 1129(d))**. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, as amended.

21. **Only One Plan.** The Plan and the BRACII CVA are the only plan and scheme of liquidation of the Debtors pending before this Bankruptcy Court or any other court, and no other party in interest has filed a competing plan.

22. **Substantive Consolidation.** The provisions of the Plan with respect to substantive consolidation of the Estates of the U.S. Debtor Group are appropriate.

23. **Modifications to the Plan**. The modifications to the Plan set forth in this Order, including those modifications set forth on Exhibit A attached hereto (the "Technical Modifications"), constitute technical changes and/or changes with respect to particular Claims by agreement with the holders of such Claims, and do not adversely change the treatment of any other Claims or Interests. Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims

16

or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

24.     **Good Faith Solicitation (11 U.S.C. § 1125(e))**.  Based on the record before the Bankruptcy Court in these Chapter 11 Cases, the Debtors and their respective officers, directors, employees, agents, counsel and other professionals have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules and Solicitation Order in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the limitations of liability set forth in the Plan.

25.     **Assumption**.  Article VII of the Plan, which governs the assumption and assignment and rejection of executory contracts and unexpired leases, satisfies the requirements of section 365(a), (b), (c) and (f) of the Bankruptcy Code.  The assumption and assignment of those executory contracts and unexpired leases that are to be and, unless otherwise so designated prior thereto, will be assumed and assigned on the date on which the Clerk of the Bankruptcy Court enters this Order on the docket of the Bankruptcy Court (the "Confirmation Date") in accordance with the Plan, the Cherokee Settlement Agreement and by operation of this Order are hereby approved, and these agreements shall remain in full force and effect for the benefit of Cherokee or its affiliates, in accordance with their respective terms, notwithstanding any provision in these agreements or in any applicable law, including those of the type contemplated in sections 365(b)(2) and (f) of the Bankruptcy Code, that restricts, restores, or conditions in any

17

way such assignment or transfer, including, change of control, payment of liabilities triggered by
the assignment, and use and going dark provisions. Unless otherwise specified in this Order, any
assignment of such executory contracts and unexpired leases will be effective as of the
Confirmation Date. Such assumptions or assumptions and assignments are in the best interests
of the Debtors, their Estates, and all parties in interest in these Chapter 11 Cases. All executory
contracts and unexpired leases listed in the Plan Supplement, subject to any qualifications set
forth therein, shall be assumed and assigned to Cherokee, and the Cherokee Settlement
Agreement provides adequate assurance of future performance under such agreements and
adequately provides for the timely payment of cure amounts by Cherokee, if any, in Cash in
accordance with section 365(b)(1) of the Bankruptcy Code.

26.    **Rejection**. In light of the liquidation of the Debtors' estates and the fact
that there is no ongoing business or operations of the Debtors, the executory contracts and
unexpired leases of the Debtors to be rejected on the Confirmation Date in accordance with the
Plan are burdensome and, as such, the rejection thereof is in the best interests of the Debtor party
to such contracts or leases, its Estate, and all parties in interest in these Chapter 11 Cases.

27.    **Payments.** Any payments made or promised by the Debtors or persons
acquiring property under the Plan for services or for costs and expenses in, or in connection with,
the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have
been disclosed to and approved by, or are subject to approval of the Bankruptcy Court as
reasonable.

28.    **Injunction Provisions**. The record of the Confirmation Hearing, the
Confirmation Memorandum, the Aprati Affidavit and the Chapter 11 Cases is sufficient to

18

support the limited releases, exculpations and injunctions provided for in Article X of the Plan

and decretal paragraph 31 of this Order.  Such releases, exculpations and injunctions are fair,

supported by consideration and necessary to the Plan's feasibility and are in the best interests of

the Debtors, Reorganized BGI, Reorganized BRACII and all of the Debtors' creditors and

interest holders.  Moreover, the releases by third parties under the Plan are voluntary in that they

are limited to those third parties who voted for the Plan, and are in consideration for the

obligations of the Debtors, Reorganized BGI and Reorganized BRACII under the Plan and the

BRACII CVA and the Cash and other contracts, instruments, releases, agreements or documents

to be delivered in connection with the Plan.

29.    **Committee Resolution.**  The resolution that was reached with the

Creditors' Committee, the High Tide Indenture Trustee and the Convertible Subordinated Notes

Indenture Trustee (the "Committee Resolution"), which provided for certain distributions to

Holders of Class 5A and Class 6A Claims and payment of certain Convertible Subordinated

Notes Indenture Trustee Fees, High Tides Indenture Trustee Fees and Senior Notes Indenture

Trustee Fees in exchange for the withdrawal of the subordinated trustees' objection at the

bidding procedures hearing in connection with the sale contemplated by the ASPA (the "North

American Sale"), greatly facilitated approval of the bidding procedures and the North American

Sale, and the eventual consummation of the North American Sale, thereby benefiting the Debtors

and their Estates, and have been approved by the vote of all Impaired voting Classes.

30.    **Good Faith Settlement.**  Except as otherwise provided in the Plan and

this Order, the provisions of the Plan and the Cherokee Settlement Agreement constitute a good

faith compromise and settlement between and among the Debtors and their creditors of all claims

19

•

or litigation pending or threatened, or that were or could have been commenced against the

Debtors prior to the entry of this Order (other than the Plan Administrator's and BRACII Plan

Administrator's ability to prosecute and otherwise dispose of objections to Claims to the extent

pursued under the Plan ~~and other than in respect of the retained Vested Assets~~ *CJC*, and of all

contractual, legal or equitable subordination or turnover rights, all of which are cancelled and

terminated. Such settlements, which are reflected in the relative distributions and recoveries of

Holders of Claims and Interests under the Plan and in the Cherokee Settlement Agreement, (a)

will save the Debtors and their Estates the costs and expenses of prosecuting various disputes, the

outcome of which could consume substantial resources of the Debtors' Estates and require

substantial time to adjudicate, and (b) have facilitated the negotiation, creation and

implementation of the Plan and benefit the Debtors' Estates and creditors.

31.    **No Further Action**.  No further action of this Bankruptcy Court or the

respective directors or shareholders of the Debtors, Reorganized BGI or Reorganized BRACII

will be required to authorize Reorganized BGI or Reorganized BRACII to enter into, execute and

deliver, or adopt, as the case may be, the documents necessary to implement the provisions of the

Plan, including, without limitation, the substantive consolidation and of the U.S. Debtor Group

and the merger of the BGI Subsidiary Debtors into BGI as contemplated in the Plan and in this

Order.

32.    **Retention of Jurisdiction**.  The Bankruptcy Court may properly retain

jurisdiction over these Chapter 11 Cases (i) as provided for in Article XI of the Plan, (ii) as

provided for in this Order, and (iii) for the purposes set forth in sections 1127 and 1142 of the

Bankruptcy Code; *provided, however*, the retention of jurisdiction by the Bankruptcy Court shall

in no way prejudice the UK Officeholder's rights to avail itself of the jurisdiction of the English Court.

## DECREES

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

    1. **Confirmation**. The Plan, as amended by the Technical Modifications, is approved and confirmed under section 1129 of the Bankruptcy Code. The Plan complies with all applicable provisions of the Bankruptcy Code and applicable Bankruptcy Rules relating to confirmation. Unless otherwise provided herein, each provision of the Plan is hereby approved and incorporated by reference into this Order. The terms of the Cherokee Settlement Agreement, the Plan Supplement and all exhibits to the Plan, including the Allocation Settlement Agreement, the Plan Administration Agreement and the BRACII CVA, are incorporated by reference into and are an integral part of the Plan and this Order and the transactions contemplated thereby are approved.

    2. **Technical Amendments**. The modifications and clarifications to the Plan set forth herein, including those Technical Amendments included in Exhibit A to this Order, meet the requirements of sections 1127(a) and (c) of the Bankruptcy Code and such modifications and clarifications do not adversely change the treatment of the Claim of any creditor or Interest of any Holder thereof within the meaning of Bankruptcy Rule 3019, and no further disclosure, solicitation or voting is required.

    3. **Objections**. To the extent that an Objection was not otherwise resolved or withdrawn, all Objections are overruled on their merits.

4.    **Plan Supplement; Other Plan Documents**.  The documents contained in the Plan Supplement and any other Plan exhibits, and any amendments, modifications, and supplements thereto, including, the Plan Administration Agreement, the BRACII CVA, the Allocation Settlement Agreement, the Cherokee Settlement Agreement, all documents and agreements related thereto or to consummation and implementation of the Plan, and any other documents and agreements introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by Reorganized BGI, Reorganized BRACII and UK Officeholder, as applicable, are authorized and approved.  Without need for further order or authorization of the Bankruptcy Court, the Debtors, Reorganized BGI or Reorganized BRACII are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan Supplement or to any other Plan documents (except the Cherokee Settlement Agreement) that do not materially modify the terms of such documents or of the ASPA and the North American Sale Order and are consistent with the Plan.

5.    **Substantive Consolidation of the U.S. Debtor Group.**  The U.S. Debtor Group is substantively consolidated as provided for in Article IV of the Plan.

6.    **Good Faith Settlement.**  Except as otherwise provided in the Plan and this Order, the provisions of the Plan and the Cherokee Settlement Agreement constitute a good faith compromise and settlement between and among the Debtors and their creditors of all claims or litigation pending or threatened, or that were or could have been commenced against the Debtors prior to the entry of this Order (other than the Plan Administrator's and BRACII Plan Administrator's ability to prosecute and otherwise dispose of objections to Claims to the extent

22

pursued under the Plan), and of all contractual, legal or equitable subordination or turnover rights, all of which are cancelled and terminated.  All settlements reflected in the Plan or attached hereto, including the Allocation Settlement Agreement, the Cherokee Settlement Agreement, the Committee Resolution and the Stipulation and Order Approving the Assumption and Assignment of Insurance Policies and Related Agreement with Insurance Company of North America, et al. (the "ACE Stipulation"), substantially in the same form as the stipulation attached hereto as Exhibit B, are fair and reasonable and are approved in all respects pursuant to Bankruptcy Rule 9019(a).

       7.     **Merger of BGI Subsidiary Debtors into BGI.**  On the Effective Date and without further action,  (i) each of the BGI Subsidiary Debtors shall be merged into BGI and dissolved and (ii) the Chapter 11 Cases of the BGI Subsidiary Debtors shall be closed pursuant to Article IV of the Plan.

       8.     **Appointment of Plan Administrator and BRACII Plan Administrator.** On the Effective Date, Walker, Truesdell & Associates, Inc. shall be appointed as the Plan Administrator pursuant to the terms of the Plan and the Plan Administration Agreement, the terms of which are hereby approved.  On the Effective Date, BTB Associates LLC shall be appointed as the BRACII Plan Administrator pursuant to the terms of the Plan.  The Plan Administrator and BRACII Plan Administrator will administer the Plan with respect to Reorganized BGI and Reorganized BRACII, respectively.  The Plan Administrator and BRACII Plan Administrator shall have all the rights, powers and duties afforded to them pursuant to the Plan and the Plan Administration Agreement, as applicable.

23

9.    **Corporate Action.**  On the Effective Date, and automatically and without further action, (i) each existing member of the board of directors for each of the BGI Subsidiary Debtors shall be deemed to have resigned, (ii) the certificates of incorporation and by-laws for Reorganized BGI and Reorganized BRACII shall be amended pursuant to section 4.5 of the Plan, (iii) Hobart G. Truesdell shall serve as the sole officer and director of Reorganized BGI and shall be authorized to record such documents, instruments, releases and other agreements and to take such actions as may be necessary or appropriate under the Plan and (iv) Robert F. Troisio at BTB Associates LLC shall serve as the sole officer and director of Reorganized BRACII and shall be authorized to execute, deliver, file or record such documents, instruments, releases and other agreements and to take such actions as may be necessary or appropriate pursuant to the Plan. The appointment or continuation in office as officers and directors of Reorganized BGI and Reorganized BRACII of the individuals previously identified by the Debtors in the Plan Supplement is approved and ratified as being in the best interests of the Debtors, their creditors and equity security holders and consistent with public policy, and such officers and directors hereby are deemed elected and appointed as of the Effective Date.

10.    **Plan Classification Controlling.**  The classifications of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed by the terms of the Plan and the Cherokee Settlement Agreement. The classification of certain Claims deemed to be undetermined by the Debtors as either Cherokee Assumed Liability Claims or U.S. Debtor Group General Unsecured Claims shall be determined pursuant to the terms of the Plan, the ASPA, the Cherokee Settlement Agreement and other applicable documents and Orders entered by this Bankruptcy Court. The classifications set forth on the Ballots and Master Ballots

24

tendered to or returned by the Debtors' creditors in connection with voting on the Plan (a) were

set forth on the Ballots and Master Ballots solely for purposes of voting to accept or reject the

Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise

affect, the actual classification of such Claims and Interests under the Plan for distribution

purposes, and (c) shall not be binding on the Debtors, Reorganized BGI, Reorganized BRACII or

Cherokee.

11.    **Disbursements.** Unless otherwise provided herein, any distributions and

deliveries to be made hereunder shall be made as provided for in Article VI of the Plan.

12.    **Binding Effect**. Immediately upon entry of this Order, the Cherokee

Settlement Agreement, the Plan and their provisions shall be binding upon the Debtors, the

Creditors' Committee, the UK Officeholder, Reorganized BGI, Reorganized BRACII, any entity

acquiring or receiving property as a distribution under the Plan, and any Holder of a Claim

against or Interest in the Debtors, including all governmental entities, whether or not the Claim or

Interest of such Holder is Impaired under the Plan and whether or not such Holder or entity has

accepted the Plan.

13.    **References to Plan Provisions.** The failure to reference or discuss all or

part of any particular provision of the Plan herein shall have no effect on the validity, binding

effect and enforceability of such provision, and such provision shall have the same validity,

binding effect and enforceability as every other provision of the Plan.

14.    **Transmittal of Materials; Notice**. The transmittal and service of the

Disclosure Statement, the Plan, the BRACII CVA, the Plan Supplement, the Ballots, the Master

Ballots, the Solicitation Order, the Cherokee Settlement Agreement and the Confirmation

Hearing Notice, and all exhibits to any such documents, as set forth in the appropriate
declarations are hereby approved as proper notice. The publication of the Confirmation Hearing
Notice is hereby approved as proper notice.

15.    **Vesting of Assets with the UK Officeholder (11 U.S.C. § 1141(b), (c))**.
On the Effective Date, the Vested Assets shall vest with the Scheme Fund (as that term is defined
in proposal 8.1 of the BRACII CVA) for distribution in accordance with the BRACII CVA.

16.    **Vesting of Assets with Reorganized BGI and Reorganized BRACII
(11 U.S.C. § 1141(b), (c))**. Except as otherwise provided in this Order, the Plan, the North
American Sale Order, the ASPA, the Cherokee Settlement Agreement or the Allocation
Settlement Agreement, all property of the Debtors' Estates, to the full extent of section 541 of the
Bankruptcy Code, and any and all other rights and assets of the Debtors of every kind and nature,
on the Effective Date of the Plan, shall vest in Reorganized BGI and Reorganized BRACII, as the
case may be, free and clear of all Liens, Claims and Interests and other encumbrances other than
(i) those Liens, Claims and Interests and encumbrances retained, preserved or created pursuant to
the Plan or any document entered into in connection with the transactions described in the Plan
and this Order, if any, and (ii) Liens that have arisen subsequent to the Petition Date on account
of taxes that arose subsequent to the Petition Date. To the extent that the succession to assets of
the Debtors by Reorganized BGI or Reorganized BRACII pursuant to the Plan is deemed to
constitute "transfers" of property, such transfers of property to Reorganized BGI or Reorganized
BRACII, as applicable, (a) shall be legal, valid and effective transfers of property, (b) vest or
shall vest Reorganized BGI, Reorganized BRACII or the Scheme Fund (as the case may be) with
good title to such property, free and clear of all Liens, Claims and Interests and encumbrances

26

except as set forth herein, and (c) do not and shall not subject Reorganized BGI and/or

Reorganized BRACII to any liability by reason of such transfer under the Bankruptcy Code or

applicable nonbankruptcy law including, but not limited to, applicable stamp, transfer or similar

taxes, as set forth in decretal Paragraph 24 of this Order, and any laws affecting successor or

transferee liability, other than the Liens, Claims and Interests and encumbrances retained,

preserved, or created pursuant hereto. Unless otherwise provided herein, on or as soon as

practical after the Effective Date, any Lien holder of the Debtors shall file the appropriate papers

in the appropriate jurisdictions to ensure that such liens are terminated. From and after the

Effective Date, Reorganized BGI and Reorganized BRACII may wind up their respective

business and use, acquire, and dispose of property and settle and compromise Claims arising

post-Confirmation without supervision by the Bankruptcy Court and free of any restrictions of

the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules, other than those

restrictions expressly imposed by the Plan, the North American Sale Order, the ASPA, the

Allocation Settlement Agreement, the Cherokee Settlement Agreement or this Order.

       17.    **Injunctions and Stays.** All injunctions or stays, whether imposed by

operation of law or by order of this Bankruptcy Court, provided for in the Chapter 11 Cases

pursuant to section 105 or 362 of the Bankruptcy Code or otherwise that are in effect on the

Confirmation Date, shall remain in full force and effect until the Effective Date. As of the

Effective Date, the stay imposed pursuant to section 362(a) of the Bankruptcy Code shall be

dissolved and of no further force and effect, subject to the injunctions set forth in decretal

paragraph 31 below, except that nothing herein shall bar the taking of such other actions as are

necessary to effectuate the transactions specifically contemplated by the Plan or this Order.

18.    **Causes of Action.**  Except as otherwise provided in this Order, the Plan, the ASPA, the North American Sale Order, the Cherokee Settlement Agreement and in any document, instrument, release or other agreement entered into in connection with the Plan, including the Allocation Settlement Agreement, (a) in accordance with section 1123(b) of the Bankruptcy Code, the Estates of the U.S. Debtor Group shall retain the U.S. Debtor Group Litigation Claims and (b) the Plan Administrator and Reorganized BGI may enforce, sue on, settle or compromise (or decline to do any of the forgoing) any or all of the U.S. Debtor Group Litigation Claims, including any applicable actions pursuant to Chapter 5 of the Bankruptcy Code.  The UK Officeholder, the BRACII Plan Administrator and Reorganized BRACII, as applicable, may enforce, sue on, settle or compromise (or decline to do any of the forgoing) any or all of the BRACII Litigation Claims, subject to the limitations set forth in the Allocation Settlement Agreement.

19.    **Termination of Creditors' Committee.**  The Creditors' Committee shall cease operating and dissolve on the Effective Date.

20.    **Creation of Plan Committee.**  On the Effective Date, the Plan Committee shall be formed and constituted and shall have the powers and authority vested in it pursuant to Article IV of the Plan and the Plan Administration Agreement.

21.    **General Authorizations**.  The Debtors, Reorganized BGI or Reorganized BRACII, as applicable, are authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Plan Documents.  The Debtors, Reorganized BGI and Reorganized BRACII

and their respective directors, officers, members, agents, and attorneys, including the UK

Officeholder, are authorized and empowered to issue, execute, deliver, file, or record any

agreement, document, or security, including, without limitation, the documents contained in the

Plan Supplement and any other Plan documents, as modified, amended, and supplemented, in

substantially the form included therein, and to take any action necessary or appropriate to

implement, effectuate, and consummate the Plan in accordance with its terms, or take any or all

corporate actions authorized to be taken pursuant to the Plan, whether or not specifically referred

to in the Plan or the Plan Supplement, without further order of the Bankruptcy Court.

               22.    **Cherokee Settlement Agreement.**  The Debtors, Reorganized BGI,

Reorganized BRACII, the Plan Administrator or the BRACII Plan Administrator, as applicable,

are authorized, empowered and directed to execute, deliver, file or record such contracts,

instruments, releases and other agreements or documents and take such actions as may be

necessary or appropriate to effectuate, implement, consummate and further evidence the terms

and conditions of the Cherokee Settlement Agreement, without further order of the Bankruptcy

Court. No person or entity other than the parties to the Cherokee Settlement Agreement and the

ASPA has or shall be deemed to have standing to contest, challenge or otherwise attempt to

modify the terms of the ASPA or the Cherokee Settlement Agreement and any allocation of

liabilities or responsibility for claims made under the Cherokee Settlement Agreement or under

the ASPA shall be binding upon all creditors and parties-in-interest of the Debtors.

               23.    **Governmental Approvals Not Required**.  This Order shall constitute all

approvals and consents required, if any, by the laws, rules, or regulations of any state or any other

governmental authority with respect to the implementation or consummation of the Plan and any

documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, the Plan Supplement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

24.    **Exemption from Certain Taxes**.  To the extent provided under section 1146(c) of the Bankruptcy Code and applicable law, any transfers from the Debtors to Reorganized BGI and Reorganized BRACII pursuant to the Plan shall not be subject to any stamp tax or other similar tax or any tax held to be a stamp tax or other similar tax by applicable law.  The appropriate state or local governmental officials or agents authorized to assess and collect such taxes shall forgo the collection of any such tax or governmental assessment and shall accept for filing and recordation any applicable instruments or documents without the payment of any such tax or governmental assessment.

25.    **Bar Date for Rejection Damage Claims**.  Pursuant to Section 7.2 of the Plan, any Claim for damages arising from the rejection of an executory contract or unexpired lease must be Filed and served on Reorganized BGI and Reorganized BRACII and their respective counsel within thirty (30) days after notice of entry of this Order or be (i) forever barred and unenforceable against the Debtors, their Estates, Reorganized BGI, Reorganized BRACII, and their respective property, and (ii) barred from receiving any Distribution under the Plan on account of such Claim.  All Allowed Claims arising from the rejection of executory contracts or unexpired leases shall be treated as a General Unsecured Claim against the U.S. Debtor Group or BRACII, as applicable.

26. **Administrative Expense Claims Bar Date**. Except for Holders of Fee

Claims, Holders of asserted Administrative Claims against the U.S. Debtor Group not paid prior

to the Confirmation Date (other than Administrative Claims of Cherokee and Cendant under the

Cherokee Settlement Agreement) must File and serve an Administrative Claim request on the

respective counsel for the Debtors, Reorganized BGI and the Plan Administrator, no later than

forty-five (45) days after the Confirmation Date (the "Administrative Claims Bar Date") or

forever be barred from doing so. The Notice of Confirmation (described in decretal Paragraph 33

below) will set forth such Administrative Claims Bar Date and constitute notice of the

Administrative Claims Bar Date. Except as otherwise provided in the Plan, the Debtors,

Reorganized BGI, Reorganized BRACII, the Plan Administrator or the BRACII Plan

Administrator, as the case may be, shall have ninety (90) days (or such longer period as may be

allowed by order of the Bankruptcy Court) following the Confirmation Date to review and object

to Administrative Claims that are not UK Administration Claims. Notwithstanding anything to

the contrary in this Paragraph, (i) Holders of asserted Administrative Claims for which a Bar

Date has previously been established shall be or have been required to submit requests for

payment of Administrative Claims on or before such applicable Bar Date or forever be barred

from doing so and (ii) Administrative Claims which are UK Administration Claims shall be

objected to, if at all, before the English Court in accordance with the BRACII CVA and English

Insolvency Law.

27. **Final Fee Applications**. Pursuant to Article XII of the Plan, all

Professionals or other persons requesting compensation or reimbursement of expenses pursuant

to any of sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services

31

rendered on or before the Effective Date (including, inter alia, any compensation requested by

any Professional or any other person for making a substantial contribution in the Chapter 11

Cases) shall File and serve on Reorganized BGI or Reorganized BRACII, as applicable, an

application for final allowance of compensation and reimbursement of expenses no later than

(i) sixty (60) days after the Effective Date (the "Fee Claim Bar Date"), or (ii) such later date as

the Bankruptcy Court shall order upon application made prior to the end of such 60-day period.

Objections to applications of Professionals for compensation or reimbursement of expenses must

be Filed and served on Reorganized BGI or Reorganized BRACII, as applicable, and the

Professionals to whose application the objections are addressed on or before (i) sixty days after

the Fee Claim Bar Date or (ii) such later date as the Bankruptcy Court shall order upon

application made prior to the end of such 60-day period or upon agreement between Reorganized

BGI or Reorganized BRACII, as applicable, and the affected Professional. Any Professional fees

and reimbursements or expenses incurred by Reorganized BGI or Reorganized BRACII

subsequent to the Effective Date may be paid by Reorganized BGI or Reorganized BRACII, as

applicable, without application to or order of the Bankruptcy Court.

28.     **Establishment of Cure Claims**.  Any cure claims established by the ACE

Stipulation attached hereto as Exhibit B or by the Cherokee Settlement Agreement are, to the

extent not subject to an objection or agreement between the Debtors, Cherokee and such contract

party, hereby deemed to be the full and final amounts owed to such contract party as of the

Effective Date.

29.     **Discharge and Termination of Cherokee Assumed Liability Claims,**

**Claims and Interests**.  Pursuant to the Cherokee Settlement Agreement and as set forth in

32

Article X of the Plan, all Cherokee Assumed Liability Claims are hereby discharged and terminated with respect to the Debtors; *provided, however*, each Holder of a Cherokee Assumed Liability Claim shall receive from Cherokee in full satisfaction, settlement and release of and in exchange for such Cherokee Assumed Liability Claim, (i) the amount to which the Holder of such Cherokee Assumed Liability Claim is entitled under applicable nonbankruptcy law without regard to the amount of such Holder's Allowed Claim or deemed Allowed Claim under the Plan and the Bankruptcy Code, or (ii) such other amount to which Cherokee and the Holder of such Cherokee Assumed Liability Claim agree. Confirmation of the Plan will not discharge any Claims against the Debtors other than Cherokee Assumed Liability Claims. No Holder of a Claim against any Debtor may, on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, any Debtor, Reorganized BGI, Reorganized BRACII, the Plan Committee, the Plan Administrator, the BRACII Plan Administrator, the UK Officeholder, their respective successors or their respective property, other than as contemplated under the Plan and/or the BRACII CVA.

          30.    **Objections to Claims.** Except as otherwise provided in this Order and the Plan, objections to Claims shall be Filed with the Bankruptcy Court and served upon each affected creditor no later than 120 days after the Effective Date (other than Claims for which no objection or request for estimation shall be required pursuant to the Plan) (the "Claims Objection Deadline"); *provided, however*, the deadline may be extended by Bankruptcy Court order upon motion of Reorganized BGI and/or Reorganized BRACII without notice or a hearing. The Claims Objection Deadline shall not apply to Cherokee Assumed Liability Claims, BRACII General Unsecured Claims, UK Administration Claims and any other BRACII Claims which are

to receive distributions as and when provided under the BRACII CVA. Holders of Claims filed or asserted against BRACII as to which objections are asserted shall be entitled (i) in the case of those Administrative Claims, Priority Tax Claims and Priority Non-Tax Claims against BRACII that are not UK Administration Claims, to have such objections determined by the Bankruptcy Court and (ii) in the case of all other claims asserted against BRACII, to have such objections determined in accordance with English Insolvency Law in connection with the UK Administration. Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim; *provided, however*, the restrictions on distributions established pursuant to Section 8.3 of the Plan shall not apply to BRACII General Unsecured Claims, UK Administration Claims and any other BRACII Claims that are to receive distributions as and when provided in the BRACII CVA.

31.    **Approval of Discharge of Debtor and Injunction; Limitations of Liability.** The release and injunction provisions set forth in Section 10.2 of the Plan are hereby approved.

32.    **Evidence of Claims and Interests.** Except as otherwise provided in the Plan and in this Order, subject to the occurrence of the Effective Date and other than for purposes of receiving distributions under the Plan, upon entry of this Order on the docket of the Clerk of this Bankruptcy Court, all evidences of Claims against and Interests in the Debtors that are

34

Impaired under the Plan, shall be and are deemed to be canceled and terminated, and the obligations of the applicable Debtors thereunder or in connection therewith shall be discharged.

      33.    **Notice of Entry of Order**.  On or before the tenth (10th) Business Day following the date of entry of this Order, the Debtors shall serve notice of entry of this Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all creditors and interest holders, the United States Trustee, and other parties in interest, by causing notice of entry of this Order (the "Notice of Confirmation"), in substantially the same form as the notice attached hereto as Exhibit C, to be delivered to such parties by first-class mail, postage prepaid.  As soon as reasonably practicable following the date of entry of this Order, the Debtors shall cause the Notice of Confirmation, in substantially the same form as the notice attached hereto as Exhibit C, to also be published in the following publications: *USA Today*, the *New York Times* and the domestic and international editions of the *Wall Street Journal*.  The notice described herein is adequate under the particular circumstances and is approved, and no other or further notice is necessary.

      34.    **Notice of Effective Date**.  Within ten (10) Business Days following the occurrence of the Effective Date, Reorganized BGI and Reorganized BRACII shall file notice of the occurrence of the Effective Date and shall serve a copy of same on those entities which have filed a notice of appearance and request for service of pleadings in these Chapter 11 Cases.  The notice described herein, in substantially the same form as the notice attached hereto as Exhibit D, is adequate under the particular circumstances and is approved, and no other or further notice is necessary.

35.    **Enforceability**. Pursuant to sections 1123(a) and 1142(a) of the

Bankruptcy Code and the provisions of this Order, the Plan shall apply and be enforceable

notwithstanding any otherwise applicable nonbankruptcy law.

36.    **Modification/Reversal**. Notwithstanding Fed. R. Bankr. P. 3020(e), this

Order shall be effective according to its terms upon its entry. If any provision of this Order is

hereafter modified, vacated or reversed by subsequent order of the Bankruptcy Court or any other

court, such reversal, modification or vacation shall not affect the validity of the obligations

incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of

written notice of any such order; nor shall such reversal, modification or vacation hereof affect

the validity or enforceability of such obligations. Notwithstanding any reversal, modification or

vacation hereof, any such obligation incurred or undertaken pursuant to and in reliance on this

Order prior to the effective date of such reversal, modification or vacation shall be governed in

all respects by the provisions hereof and of the Plan, and all documents, instruments and

agreements related thereto, or any amendments or modifications thereto.

37.    **Conflicts Between Order and Plan**. To the extent of any inconsistency

between the provisions of the Plan and this Order, the terms and conditions contained in this

Order shall govern. The provisions of this Order are integrated with each other and are

nonseverable and mutually dependent unless expressly stated by further order of this Bankruptcy

Court.

38.    **Effect of Order.** This Order shall not conflict with or derogate from the

provisions of the Cherokee Settlement Agreement, the ASPA, the North American Sale Order or

otherwise deprive the relevant parties or any of their affiliates or subsidiaries of the benefits

36

intended to be conferred on them by the Cherokee Settlement Agreement, the ASPA and the North American Sale Order.

39.    **Substantial Consummation of the Plan.** "Substantial consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur upon completion of all actions and transactions required by the Plan to be effected prior to the Effective Date.

40.    **Separate Order.** This Order is and shall be deemed a separate Order with respect to each of the Debtors in each Debtor's separate Chapter 11 Case for all purposes. The Clerk of the Bankruptcy Court is directed to file and docket this Order in the Chapter 11 Case of each of the Debtors.

41.    **Modification of Plan by Debtors.** The Debtors shall have the right, in accordance with section 1127 of the Bankruptcy Code, to modify or amend the Plan after the Confirmation Date to the full extent permitted by law, provided, however that any such modification or amendment shall be consistent with the ASPA, the Cherokee Settlement Agreement, and prior orders of this Bankruptcy Court, including the North American Sale Order.

42.    **Retention of Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over these Chapter 11 Cases (i) as provided for in Article XI of the Plan, (ii) as provided for in this Order, and (iii) for the purposes set forth in sections 1127 and 1142 of the Bankruptcy Code; *provided, however*, the retention of jurisdiction by the Bankruptcy Court shall in no way prejudice the UK Officeholder's rights to avail itself of the jurisdiction of the English Court.

37

Dated: Wilmington, Delaware
        *April 20*, 2004

CHARLES G. CASE II
UNITED STATES BANKRUPTCY JUDGE